**In re the Matter of Megan Renee GRISSOM.**

**No. 77A01–9008–CV–340.**

Court of Appeals of Indiana, First District.

June 12, 1991.

Joe Sullivan, Bloomfield, for appellant.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Tina Eason (Eason) appeals the Sullivan Circuit Court's order changing custody of her daughter Megan Renee Grissom from herself to Danny Grissom (Grissom), Megan's father. We reverse.

## ISSUE

We restate Eason's issue on appeal as follows:

Is there sufficient evidence to support the trial court's order modifying the prior custody order?

## FACTS

Megan was born to Eason on October 23, 1987. On January 20, 1988, Grissom was adjudged to be Megan's father in an action to establish paternity. An agreed order was entered on November 4, 1988, granting Eason custody of Megan. Grissom was given visitation privileges.

On February 6, 1989, Grissom filed a "Petition for Custody", in which he sought to have custody of Megan awarded to him. Grissom alleged that Eason had left Indiana with Megan without notifying either Grissom or the court and that his visitation rights thus had been violated. Grissom was granted temporary custody of Megan and was ordered to notify the court if and when he located Megan and to return her to Indiana. Grissom located Eason and Megan at the home of Eason's mother, Anna Dillon, in Peoria, Illinois, and brought Megan back to his home in Indiana.

After a hearing on Grissom's petition, the trial court entered the following Findings of Fact and Conclusions of Law:

## "FINDINGS OF FACT

Evidence having been heard, the Home study of Danny R. Grissom and his sister, Shirley Brown, in Hymera, Sullivan County, Indiana, and the home study of the home of Anna M. Dillion [sic], in Peoria, Illinois having been reviewed, the Court now finds:

1. Megan Renee Grissom is a female child, born October 23, 1987. Her mother is Tina Louise Eason and her father is Danny R. Grissom.

2. Danny R. Grissom desires that the custody of the child be placed with him at his home. Tina Louise Eason desires that the custody of the child be placed with her at the home of her mother, Anna M. Dillion [sic], in Peoria, Illinois.

3. The age of the child is such that the child's wishes as to where she might reside cannot be determined.

4. Danny R. Grissom owns his home in Hymera, Indiana, where he has resided for the last ten years. He is unmarried and the only other person occupying the home is Megan Renee Grissom. Danny R. Grissom's mother resides in a home nearby and two sisters and a brother live in the near vicinity of his home. The family is closeknit [sic]. His mother and siblings visit in his home and work with him and Megan on a daily basis.

5. Prior to January 4, 1989, Tina Louise Eason lived in Carlisle, Sullivan county, Indiana, with Megan and a four year old daughter by a former marriage. Without notice or consent of either this Court or Danny R. Grissom, she changed her residence to North Dakota for approximately one month, again changed her residence to the State of Missouri until March 28, 1989, and then changed her residence to the home of her mother, in Peoria, Illinois. Tina Louise Eason has a brother who lives in Peoria and two sisters who live in the State of Indiana. She also has a half sister and two half brothers, ages nine, seven and five, who reside with her, her mother and her other daughter. The father of Tina Louise Eason's three half siblings is under a Restraining Order because of abuse to Tina's mother.

6. Since May 31, 1989, when Danny Grissom took custody of Megan, neither Tina Eason or her mother have had any significant contact with Megan. Although visitation was provided to Tina by Court order, she has not exercised her visitation a single time from October 25,

1989, until the date of the last hearing of March 28, 1990.

7. Tina continues to live with her mother, Anna M. Dillion [sic], in her mother's home in Peoria, Illinois. Mrs. Dillion's [sic] home has been approved for licensed foster care by the Catholic Social Services in Peoria. However, Mrs. Dillion [sic] is apparently totally dependent on public assistance.

8. Danny R. Grissom is a high school graduate and has attended Vincennes University for two years. He has cerebral palsy, which does not interfere with his ability to care for his child. He is gainfully employed.

Tina Louise Eason is a graduate of a special education high school in Columbus, Ohio and her physical health is good. She is presently employed.

The physical health of Megan Renee Grissom is good and her mental abilities are as yet undetermined, she being 2½ years old. No mental problems have yet developed with said child.

9. The home, family relationship and general living conditions of Danny R. Grissom are excellent.

## CONCLUSIONS OF LAW

Upon the foregoing findings, the court now concludes that in the best interest of Megan Renee Grissom, custody of said child should be placed with her biological father, Danny R. Grissom, and that she shall reside in Hymera, Sullivan, [sic] County, Indiana.

The Court further concludes that Tina Louise Eason, biological mother of said child, should have visitation with said child until said child is enrolled in the public schools of Sullivan County, Indiana, one week each month. The visitation shall commence at 3:00 P.M. on the second Sunday of each month. Tina Louise Eason shall pick the child up at the residence of Danny R. Grissom for visitation and Danny R. Grissom shall pick the child up at the residence of Tina L. Eason at the conclusion of each visitation.

The Court further concludes that because of her lack of employment skills, Tina Louise Eason should not be required to contribute to the support of Megan Renee Grissom, except when said child is visiting with her.

IT IS SO ORDERED THIS 9TH day of May, 1990.

/s/David K. Johnson, Special Judge
David K. Johnson, Special Judge
Sullivan Circuit Court"

Record at 100–01. Eason now appeals.

## DISCUSSION AND DECISION

At the outset, we note that Grissom has not favored us with an appellee's brief. Although we may reverse upon a showing by Eason of *prima facie* error in the trial court's judgment, *Stacey–Rand, Inc. v. J.J. Holman, Inc.* (1988), Ind.App., 527 N.E.2d 726, 727, we are not compelled to do so and may, in our discretion, decide the case on its merits. *S.M.V. v. Littlepage* (1982), Ind.App., 443 N.E.2d 103, 105, *trans. denied.* We exercise such discretion here.

Eason claims the trial court used the wrong standard when it ordered a change of custody. She notes that IND.CODE § 31–6–6.1–11(e), found in the chapter entitled Paternity, provides as follows:

"(e) The court may modify an order determining custody rights whenever modification would serve the best interests of the child."

In contrast, in the chapter entitled Dissolution of Marriage, one finds the following standard for custody modification:

"(d) The court in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable ..."

IND.CODE § 31–1–11.5–22(d).

It would appear at first blush that the standard for custody modifications arising out of paternity actions is different from the standard for those arising out of marriage dissolution actions. Indeed, the third district of this court so found in *Griffith v. Webb* (1984), Ind.App., 464 N.E.2d 384, 385.

However, the *Griffith* court expressed great amazement at this apparent difference and recommended that "the Legislature perhaps examine this discrepancy and the possible constitutional ramifications thereof...." *Id.*

No legislative change occurred, and six years later the fourth district of this court took a hard look at this issue in *Walker v. Chatfield* (1990), Ind.App., 553 N.E.2d 490. In a thoughtful and well-reasoned opinion, the *Walker* court found "the rationale for requiring a substantial change of circumstances—and the principle that a permanent residence is considered best for the welfare and happiness of a child—should apply to all children whether the parents have been married or not." *Walker,* 553 N.E.2d at 496.

■ We agree with the *Walker* court that it is in the child's best interest to require a substantial and continuing change in circumstances before modifying a custody order. *See id.* Therefore, we hold that in a custody modification proceeding arising out of a paternity action, the petitioning party must demonstrate a substantial and continuing change in circumstances so as to make the existing custody order unreasonable. If we were to hold otherwise, serious constitutional problems may arise. *See Stanley v. Illinois* (1972), 405 U.S. 645, 658, 92 S.Ct. 1208, 1216, 31 L.Ed.2d 551, 563 (Statute denying a hearing on fitness before the removal of children from the custody of an unwed father while granting such a hearing to other parents is "inescapably contrary to the Equal Protection Clause"); *Levy v. Louisiana* (1968), 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (Statute denying natural, illegitimate children the right to bring a wrongful-death action for the death of their mother held unconstitutional).

■ We turn now to the trial court's judgment in the present case, keeping in mind that our review is limited to determining whether the trial court abused its discretion. *Simons v. Simons* (1991), Ind. App., 566 N.E.2d 551, 554. An abuse of discretion occurs when the judgment is against the logic and effect of the facts and circumstances or the inferences drawn therefrom and if there is no substantial probative evidence to support the modification order. *Pribush v. Roy* (1983), Ind. App., 456 N.E.2d 747, 749, *trans. denied.*

■ Our review of the record indicates that Eason removed Megan from Indiana without advising Grissom or the court, and that Grissom's visitation rights were frustrated as a result. At the hearing on Grissom's petition, both Eason and her mother assured the court that Eason and Megan would remain living with Eason's mother and that Grissom's visitation rights would not be frustrated in the future. It appears that neither Eason nor Grissom is able to care for Megan without the aid of their respective families; however, with such help, either parent could provide adequately for Megan's needs.

The trial court did not articulate, nor do we find, a substantial and continuing change in circumstances warranting a change of custody. We cannot agree that uprooting Megan from her home and changing custody from Eason to Grissom was "in the best interest of Megan". Record at 101. After viewing the record in its entirety, and considering our fixed policy favoring a stable permanent home, we find the trial court's decision to be contrary to the logic and effect of the facts and circumstances brought to the court's attention.

We sincerely regret that our decision requires that Megan's life be disrupted once again. However, as we find the trial court's judgment is an abuse of discretion, it must be reversed. We remand to the trial court with instructions to enter orders consistent with this opinion, including an appropriate support order.

Judgment reversed.

ROBERTSON, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I dissent from the Majority Opinion for these reasons:

1. *Walker v. Chatfield* (1990), Ind.App., 553 N.E.2d 490 is not correct. The Majority states: "We agree the court's decision in *Walker* is correct, and hold that in a custody modification proceeding arising out of a paternity action, the petitioning party must demonstrate a substantial and continuing change in circumstances so as to make the existing custody order unreasonable." The Majority is incorrect for two reasons: a) *Walker* refused to follow *Griffith v. Webb* (1984), Ind.App., 464 N.E.2d 384 which clearly holds that it is up to the Indiana Legislature to change the statutes here under consideration. b) *Walker* and the Majority ignores the plain meaning of IC 31–1–11.5–22 and IC 31–6–6.1–11 thereby adding words and meaning obviously not intended by the legislature. As Justice DeBruler so aptly cautioned in *Grody v. State* (1972), 257 Ind. 651, 278 N.E.2d 280 at 285: "It is not within the province of the Court to expand or contract the meaning of a statute by reading into it language which will, in the opinion of the Court, correct any supposed omissions or defects therein." (citation omitted)

2. *Walker* and the Majority Opinion are in conflict with the stated purpose and policy of the Indiana Legislature. IC 31–6–1–1(3) and (6) are particularly applicable. The Statute and these subsections provide: "It is the policy of this state and the purpose of this article: (3) To insure that children within the juvenile justice system are treated as persons in need of care, treatment, rehabilitation, or protection; (6) To remove children from their families only when it is in the child's best interest or in the best interest of public safety."

It is also interesting to note that the Indiana Legislature has provided that juvenile court has exclusive original jurisdiction of the paternity of a child. IC 31–6–2–1.1(a)(3).

3. I disagree that there are any "serious constitutional problems" that may arise by giving both statutes their plain meaning. *Walker* fails to enlighten us as to what those problems might be. The Majority refers us to *Stanley v. Illinois* (1972), 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551, and *Levy v. Louisiana* (1968), 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436. Neither *Stanley or Levy* stir a fear of constitutional confrontation. *Stanley* held that an Illinois law denied equal protection when it presumed that upon the death of the mother an unwed father was unfit to have custody of his children. The children were made dependents of the state without any hearing or evidence of the father's fitness to have custody. The *Stanley* Court made it quite clear that "The State's right—indeed, duty—to protect minor children through a judicial determination of their interests in a neglect proceeding is not challenged here." 405 U.S. at 649, 92 S.Ct. at 1211.

*Levy* involved a Louisiana statute which excluded illegitimate children from bringing a wrongful death action. The United States Supreme Court held that this statute constituted invidious discrimination. "Legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly inflicted on the mother." 391 U.S. at 72, 88 S.Ct. at 1511. The Court treated the wrongful death right of action as a basic civil right. At the same time, the Court recognized that a "State has broad power when it comes to making classifications (*Ferguson v. Skrupa*, (1963) 372 U.S. 726, 732 [83 S.Ct. 1028, 1032, 10 L.Ed.2d 93]) . . . the end result is whether the line drawn is a rational one." *Id.* at 71, 88 S.Ct. at 1511. Here, the Indiana Legislature has clearly drawn a rational line as stated in its policy and purpose. With little imagination and experience, it is clear that a juvenile court must be granted broad standards (best interest) when dealing with the custody of a juvenile. The circumstances are too many and varied to enumerate here, but a "substantial and continuing change in circumstances" standard for adjusting the many and varied custody situations presented to a juvenile court would certainly destroy the legislative purpose and policy. As the Court pointed out in *Cafeteria Workers v. McElroy* 367 U.S. 886, 894, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961) "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situa-

tion ... what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Id.*, at 895, 81 S.Ct. at 1748–49.

4. Even if I were to concede which I do not that the "substantial and continuing change in circumstances" applied, I would hold that the trial court did not abuse its discretion. The Majority states in the last paragraph of its opinion: "We sincerely regret that our decision requires that Megan's life be disrupted once again. However, as we find that the trial court's judgment is an abuse of discretion, it must be reversed." I would affirm the judgment assuming *arguendo* the standard adopted by the Majority is applicable.

A complete lack of stability in the child's home life is exhibited in the findings of the juvenile court. Without notice to the father or the juvenile court, Eason took the two and a half year old child to North Dakota for a month; then to Missouri; and finally to her mother's home in Peoria, Illinois. Without any effort on Eason's part, the child was finally located by the father. Certainly, instability of the child's home life is a permissible finding by the juvenile court.

The best interest of the child would certainly be better served if custody were given to the father. The evidence before the juvenile court indicated that neither the father or Eason could care for the child without the assistance of other members of their family. Eason's mother is on welfare or "public assistance." Eason's other four year old daughter, a half sister and two half brothers ages nine, seven and five also reside in the same home with Eason's Mother. Too, the husband of Eason's mother is presently under a restraining order because of his violent conduct in the home. In contrast, the father is unmarried and has the assistance of his mother and sisters. The trial court found that his "... home, family relationship and general living conditions ... are excellent."

The Majority Opinion has stepped over the line which divides the judicial and legislative constitutional responsibilities. The Majority Opinion has re-drafted the juvenile statute and altered drastically the purpose and policy of the Indiana Legislature as it relates to juveniles. No violation of equal protection or invidious discrimination can be shown, nor is any violation of a basic civil right involved by the implementation of these statutes. The juvenile court judgment should be affirmed.