605 N.E.2d 1202 (1993)
In re: the PATERNITY OF Adam Porter SEIFERT, Collette M. Seifert, Appellant-Respondent,
v.
Bret T. Porter, Appellee-Petitioner.
No. 79A05-9111-CV-394.
Court of Appeals of Indiana, Fifth District.
January 19, 1993.
*1203 Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, P.C., Indianapolis, for appellant-respondent.
Richard D. Martin, Miller, Martin & Stuard, Frankfort, for appellee-petitioner.
SHARPNACK, Chief Judge.
This case comes to us as an appeal by Collette Seifert (Mother) from the Tippecanoe Superior Court's order changing custody of her son Adam from herself to Adam's father, Bret Porter (Father). We affirm.
Mother raises several issues for our review, which we consolidate and restate as:
(1) Did the trial court apply the proper standard in determining Father should have custody of Adam?
(2) Is there sufficient evidence to support the trial court's judgment?
(3) Did the trial court err by not allowing Mother to present additional evidence?
The relevant facts are as follows. Adam was born to Mother on August 18, 1985. On October 2, Father filed a petition to establish paternity and, on October 15, filed a petition for visitation privileges and a restraining order to keep Mother from taking Adam out of the jurisdiction. On November 14, the court granted Father's restraining order and required both parents to undergo a mental examination. On January 9, 1986, Andrea Weiland, Ph.D., a clinical psychologist, submitted her mental evaluation of Mother and Father to the court. Pursuant to that evaluation, Dr. Weiland recommended that Mother should have custody and Father should have frequent visitation. On March 31, 1986, the court adopted Dr. Weiland's recommendations and ordered that Mother should have custody of Adam and that Father should have frequent visitation. For the next few years, Mother and Father battled continuously regarding such issues as Father's payment of child support and custody modifications.[1]
On September 12, 1989, following a stressful week, Mother, a pharmacist, noticed that Adam had the sniffles and was coughing a bit. Mother's attempt to administer medicine to Adam resulted in a slapping incident which left bruises on Adam's face. When Father picked Adam up the next day, he noticed the bruises and reported the incident to the proper authorities. The following day, Father filed a petition for custody, in which he sought to gain emergency temporary custody of Adam until the court could hear evidence regarding his request for permanent custody. According to Father, he feared Adam would suffer additional abuse and psychological harm should he return to his mother's home. Attached to Father's petition was the affidavit of Sandra Lock, a child welfare caseworker for the Clinton County Welfare Department, who had examined and talked with Adam on the evening of September 13. According to the affidavit, Lock believed Father should have custody of Adam until the court heard all of the evidence regarding Adam's care.
On September 14, 1989, a hearing was held on Father's emergency petition and *1204 the court found that it would be in Adam's best interest for Father to have temporary custody of Adam. Following a hearing on October 13, the court granted Father's petition for temporary custody and ordered Mother, Father and Adam to present themselves to Dr. Weiland to address Adam's temporary visitation with Mother. The court also continued the hearing on Father's petition for permanent custody until the parents had undergone a more complete custody evaluation.
On November 9, 1989, the court ordered that, consistent with Dr. Weiland's recommendation, Mother should have unsupervised visitation with Adam for at least two nights a week and alternate weekends. The court also ordered Mother, Father and Adam to contact Richard Lawlor, Ph.D., Child Psychiatry Department at Riley Hospital, for an evaluation of Adam's needs and the ability of Adam's parents to meet those needs.
On January 16, 1990, Dr. Lawlor filed his report and recommendation with the court. In his report, Dr. Lawlor stated that he had met with Adam, Mother, Father, and Adam's stepmother, Carrie, and that he had not only observed Adam with each of the parents, but he had also spent time with Adam alone. Dr. Lawlor stated that he had given each of the adults a series of psychological tests and that he had also talked with Dr. Weiland and Mother's therapist, Dr. Ott. Based upon his evaluation, Dr. Lawlor recommended that Mother retain custody of Adam and that both Mother and Father be required to attend counseling for three months.
Four days after Dr. Lawlor's report was filed with the court, Father moved for a continuance and the hearing on Father's petition for permanent custody was rescheduled to April 18, 1990. On March 14, Father petitioned the court for an emergency hearing to suspend Mother's visitation, alleging that Mother had sexually abused Adam. On March 15, the court modified Mother's visitation so as to require that any overnight visitation Adam had with Mother be supervised by the maternal grandmother pending the April 18 hearing. On March 27, the court ordered Mother and Adam to report to Dr. Lawlor, along with Adam's videotaped statement concerning the alleged sexual abuse, for further evaluation.
On April 16, 1990, Dr. Lawlor mailed a letter to the trial court judge concerning his evaluation of the allegations of sexual abuse by Mother. According to Dr. Lawlor, he had reviewed the videotape, met with Adam, talked with Mother alone, and talked with Mother and Adam together. Dr. Lawlor determined Adam was utilizing enormous amounts of psychological energy to present something that even he knew was not true, that Adam was receiving a great deal of reinforcement and reward for saying bad things about Mother, that the videotape was worthless because it was highly suggestive, leading, and made a day after Adam had retracted his allegations, and that there were a number of internal inconsistencies within Adam's statement that his interviewers had never followed up. In Dr. Lawlor's opinion, Adam was making up these statements so that he could live with his new little sister at Father's house. In Dr. Lawlor's opinion, Adam had not been molested by Mother.
On April 18, 1990, the court held a hearing on Father's petition for permanent custody of Adam. The court advised the parties at the hearing that Dr. Lawlor's custody evaluations would be admitted into evidence at a later date and continued the hearing until May 11. On May 11, another hearing was held on Father's petition for permanent custody. Dr. Lawlor's letter, as well as Dr. Lawlor's testimony and Mother's testimony, was submitted into evidence. At the close of the hearing, Father requested a continuance so that he could submit rebuttal evidence. The court granted the continuance to June 1, 1990. The court also modified its previous order and allowed Mother to have unsupervised visits with Adam.
On June 1, 1990, a hearing was held so that Father could present his rebuttal evidence. At the hearing, however, Father stated that he had no rebuttal evidence to present. After closing arguments, the *1205 court took the matter under advisement. On June 29, 1990, Mother was arrested and charged with battery as a result of the slapping incident in 1989. Mother pleaded guilty to a D felony and was sentenced as an A misdemeanant.
On March 28, 1991, at a time when the court had yet to rule on the permanent custody issue tried at the hearings of April 18 and May 11, 1990, Mother filed a motion to reopen the evidence. According to Mother, she wanted to present evidence of circumstances that had occurred since the court had taken the matter under advisement some ten months earlier.
Two months later, on May 28, 1991, nearly a year after having taken the matter under advisement, the court rendered the following order concerning permanent custody of Adam:
"Having considered the evidence submitted at the hearings on April 18, 1990, and May 11, 1990, in light of the statutory criteria set forth at IC 31-6-6.1-11(e) as well as all relevant factors, set forth at IC 31-6-6.1-11(a), which the Court must examine to determine custody in the best interest of the child, including:
1. the age and sex of the child;
2. The wishes of the child's parents;
3. The wishes of the child;
4. The interaction and interrelationship of the child with his parents, his siblings, and with any other person who may significantly affect the child's best interests;
5. The child's adjustment to his home, school, and community;
6. The mental and physical health of all individuals involved,
Court herein modifies the original custody order entered March 31, 1986, together with all subsequent modifications thereto until this date, to place custody of Adam Seifert Porter (formerly known as Adam Porter Seifert) with his father, Bret T. Porter, however, pursuant to IC 31-6-6.1-11(b), Court determines it to be in the best interest of this child that Bret T. Porter consult with Collette M. Seifert on major decisions concerning their child's upbringing, including, his education, healthcare, and religious training.
Court ORDERS that the child's mother, Collette M. Seifert, have the right to visit with the child at reasonable times and places... .
The above order supersedes all previous custody and visitation orders. All parties are ORDERED to comply with this order. Parties are further ORDERED to submit support worksheets in order that a support order may be entered."
(Record, pp. 192-193.)
On June 27, 1991, Mother filed a motion to correct error which the trial court denied on November 7, 1991. This appeal ensued.
Our review of the trial court's judgment is limited to determining whether the record demonstrates a clear abuse of discretion. In re Grissom (1992), Ind., 587 N.E.2d 114, 116. We may neither reweigh the evidence nor judge the credibility of the witnesses. Id. We are required to determine only whether the record reveals evidence or reasonable inferences which would serve as a rational basis for the trial court's finding. Id. If any evidence or legitimate inference drawn therefrom supports the trial court's finding and judgment, we will not intercede or interfere and exercise or use our judgment as a substitute for the judgment of the trial court. Id. This is so even if the evidence may have supported a conclusion different from that of the trial court. Id.
The controlling statute for a change of custody in a paternity action is I.C. § 31-6-6.1-11, which states in relevant part:
"(a) The court shall determine custody in accord with the best interests of the child. In determining the child's best interests, there shall be no presumption favoring either parent. The court shall consider all relevant factors, including:
(1) The age and sex of the child;
(2) The wishes of the child's parents;
(3) The wishes of the child;
(4) The interaction and interrelationship of the child with his parents, his siblings, and with any other person *1206 who may significantly affect the child's best interest;
(5) The child's adjustment to his home, school, and community; and
(6) The mental and physical health of all individuals involved.
* * * * * *
(e) The court may modify an order determining custody rights whenever modification would serve the best interests of the child."
We address first the question of whether the trial court applied the correct standard when it changed custody of Adam from Mother to Father. Mother cites Walker v. Chatfield (1990), Ind. App., 553 N.E.2d 490 and Matter of Grissom (1991), Ind. App., 573 N.E.2d 440 for the proposition that, as in dissolution actions, Father must have demonstrated a change in circumstances in order to gain custody of Adam, regardless of the wording of I.C. 31-6-6.1-11(a). Mother is incorrect.
In In re Grissom (1992), Ind., 587 N.E.2d 114, 116, our supreme court vacated Matter of Grissom and disagreed with Walker v. Chatfield. In In re Grissom, the court held that "on matters relating to change of custody in paternity actions, the standard to be applied is whether the modification would serve the best interests of the child." In re Grissom, 587 N.E.2d at 116. In its analysis, the court stated that the statute setting forth the proper standard for changes of custody in paternity actions is a clear and unambiguous one which we as courts are bound to construe and apply in accordance with its plain meaning. Id. Thus, because this was a matter relating to the change of custody in a paternity action, we hold that the trial court properly applied the standard of whether the modification would serve the best interests of Adam.[2]
Next, Mother argues that the evidence is insufficient to support the trial court's judgment. Mother's argument is two-fold. First, she argues that Father presented insufficient evidence of changed circumstances to support the modification of custody. This aspect of Mother's argument fails because, as we have already stated, Father need not have demonstrated changed circumstances in order to attain custody of Adam. Rather, Father need only have demonstrated that it was in Adam's best interest for Father to have custody.
Second, Mother argues that neither an isolated incident of misconduct, (her battery of Adam), nor the allegations of sexual abuse were sufficient to warrant modification of her custody. This portion of Mother's argument must also fail because nothing suggests that the trial court based its decision to change custody on either the battery incident or the sexual abuse allegations. Although the court did not make factual findings with respect to the factors required to be considered under I.C. 31-6-6.1-11(a) in determining the best interest of Adam, the court order did state that those factors were considered and there was evidence at the two hearings as to: Adam's age and sex; Adam's wishes to live with Father and his new sister; Adam's interaction and interrelationship with his stepmother, his new sister and Father; Adam's adjustment to Father's home and community; and the mental and physical health of everyone involved. That evidence provides a rational basis for the trial court's decision. In addition, in a subsequent hearing involving these parties, the trial court discussed its reasoning behind its decision to change custody from Mother to Father and stated,
"I let this hang on so long, in part, because it was a very difficult decision *1207 for me, the decision that I made was not really based on allegations of sexual abuse... . I discounted that... . I truly believed last summer and I truly believed at the time that I entered the decision that the environment that [Father] had established for Adam might be better for him in the long run."
(Record, pp. 951-952.)
Because there is sufficient evidence to support the trial court's judgment, we hold that there is no error on this issue.
Finally, Mother argues that the trial court erred by not allowing her to present additional evidence approximately ten months after the trial court took the matter under advisement. According to Mother, because the evidence was so close in this case, the trial court was obviously having great difficulty in determining which parent should have custody of Adam. Thus, the trial court erred by not granting her an opportunity to present additional evidence to strengthen her position. We disagree.
Evidence must be offered during the course of a trial and it is a matter of discretion whether a trial court will permit a party to present additional evidence or testimony once the party has rested, once both parties have rested, or after the close of all of the evidence. Freson v. Combs (1982), Ind. App., 433 N.E.2d 55, 60.
Although we agree with the trial court that this was indeed a difficult case, the passage of time from hearing to decision did not make it any less so. Delay only exacerbates the underlying tension and strife that make the case difficult in the first place. Nevertheless, Mother's argument here must fail because she does not support her argument with authority. Rather, she directs us to Freson for the proposition that this issue is a matter of trial court discretion, never mentions what the new evidence or changed circumstances were, and makes the bare assertion that the trial court acted illogically by not reopening her case. Mother's argument here falls far short of demonstrating an abuse of discretion by the trial court. As Father correctly stated in his brief, if Mother believes she has relevant new evidence which would indicate that it would be in Adam's best interest for her to regain custody of Adam, Mother need only initiate proceedings to modify the court's existing order. Because Mother has not demonstrated that the trial court abused its discretion by not reopening the case so that she could present additional evidence, we hold that no error occurred on this issue.
AFFIRMED.
RUCKER and CHEZEM, JJ., concur.
NOTES
[1] The legal battles between Mother and Father began on October 9, 1985, and have been continuous. The record reveals forty-four docket entries in the Tippecanoe Circuit Court Juvenile Docket concerning Mother, Father, and Adam since October 9, 1985.
[2] In her reply brief, Mother makes an effort to challenge the constitutionality of the differential standards for custody changes of children under the dissolution of marriage statutes and the paternity statutes. We will not consider this issue, as it was not presented to the trial court nor to us in the initial brief of the appellant. Lutheran Hospital of Ft. Wayne, Inc. v. Department of Public Welfare of Allen County (1979), Ind. App., 397 N.E.2d 638 (questions regarding constitutionality of statute not raised to trial court before filing of motion to correct error are not preserved for appellate consideration); Ward v. State (1991), Ind., 567 N.E.2d 85 (reply brief enables appellant only to respond to brief of appellee, not to present new theories of appeal).