# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**BILL D. EBERHARD**
Eberhard & Weimer, P.C.
LaGrange, Indiana

ATTORNEYS FOR APPELLEE:

**LINDSEY A. GROSSNICKLE**
Bloom Gates & Whiteleather, LLP
Columbia City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

GEOFFREY A. GILBERT,              )
                                 )
    Appellant-Respondent,        )
                                 )
       vs.                     )    No. 57A03-1308-DR-312
                                 )
MELINDA J. GILBERT,              )
                                 )
    Appellee-Petitioner.          )

APPEAL FROM THE NOBLE SUPERIOR COURT
The Honorable Robert Kirsch, Judge
Cause No. 57D01-1204-DR-7

**April 17, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Respondent, Geoffrey A. Gilbert (Father), appeals the trial court's Order approving the relocation request of Appellee-Petitioner, Melinda J. Gilbert (Mother).[1]

We affirm.

## ISSUES

Father raises two issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court abused its discretion by granting Mother's petition to relocate from Albion, Indiana to Goshen, Indiana.

Mother raises one issue on cross-appeal, which we restate as the following: Whether Mother is entitled to an award of appellate attorney's fees because Father filed a frivolous or bad faith appeal.

## FACTS AND PROCEDURAL HISTORY

On September 8, 2001, Father and Mother were married and they established their home in Albion, in Noble County. In the course of their nearly eleven-year marriage, Father and Mother had two children (the Children)—a son born in February of 2004, and a daughter born in January of 2007. Father also has two teenage children from a previous marriage. Father works in Goshen for a company that constructs mobile homes. Since January of 2012, Mother, who works from home, has been employed by a company headquartered in Grand Rapids, Michigan that sells food service equipment.

---

[1] An oral argument was held in this case on February 28, 2014 as part of the Women's Bench Bar Retreat at the Culver Cove Resort & Conference Center in Culver, Indiana. We thank the Women's Bench Bar for the invitation and hospitality and the attorneys for their excellent advocacy.

In the spring of 2012, Father and Mother decided to separate, and Father moved out of the marital residence. Four months later, on August 23, 2012, the trial court entered a Decree of Dissolution, which incorporated the Mediated Marital Settlement Agreement reached by Father and Mother. Pursuant to the Settlement Agreement, Father and Mother "agreed that it is in the best interests of [the Children]" for the parents to share joint legal custody and for Mother to have primary physical custody. (Appellant's App. p. 9). Father agreed to exercise his parenting time with the Children from Friday through Tuesday on alternating weekends, as well as overnight on alternating Mondays. During the Children's summer scholastic breaks, Father and Mother alternate physical custody on a weekly basis. The Settlement Agreement also provides that Father and Mother may arrange for Father to have parenting time with the Children "[a]t other reasonable times and places." (Appellant's App. p. 9). The trial court did not issue an order for child support.

Both parents are actively involved in the Children's education; they volunteer at school events and chaperone their field trips. The Children participate in a number of different sports and other extracurricular activities. Father coaches their son's baseball, football, and basketball teams, as well as their daughter's t-ball team. For several months after the divorce, Father lived only a few miles from Mother's house, so on the mornings following the Children's overnight stays, Father drove the Children to Mother's house where they would board the school bus.

In the fall of 2012, Mother's then-boyfriend (Fiancé) moved to Albion to reside with Mother and the Children. Fiancé has a child from a previous marriage who lives in Grand Rapids and spends three weekends each month with Fiancé. By the beginning of 2013,

3

Mother and Fiancé, who were expecting a baby in the spring, realized they needed more space to accommodate their family and began searching for a new home. Finding no suitable houses in Albion, Mother selected a newly constructed, five bedroom house in Goshen approximately thirty miles away. Mother entered into an agreement to sell her Albion residence and into another to purchase the home in Goshen, with both deals contingent upon the trial court's approval of the move.

On April 3, 2013, Mother filed notice with the trial court, communicating her intent to relocate from Albion to Goshen. On May 2, 2013, Father filed an objection to Mother's relocation and concurrently filed his Verified Motion for Modification of Custody, Parenting Time, and Child Support, requesting that the trial court award him physical custody. On May 10, 2013, Father filed a motion for the trial court to appoint a guardian *ad litem*. Concerned that the appointment of a guardian *ad litem* would unnecessarily delay the hearing, Mother objected, and on May 13, 2013, the trial court denied Father's request. On June 7, 2013, the trial court conducted an evidentiary hearing on the matters of Mother's request to relocate and Father's motion to modify custody. On June 10, 2013, Father filed a motion for the trial court to conduct an *in camera* interview with their son, who was nine years old at the time. That same day, following Mother's objection based on Father's failure to request the interview prior to the close of the evidence, the trial court denied Father's motion.

The next day, June 11, 2013, the trial court issued its Order approving Mother's proposed relocation and denying Father's motion to modify custody. Specifically, the trial court found that "[Mother] has met her burden of proof that her proposed relocation is

4

made in good faith and for a legitimate reason and [Father] has not met his succeeding burden to show that the proposed relocation is not in the best interest of the parties' [C]hildren." (Appellant's App. p. 5). The trial court affirmed its previous orders concerning the custody, support, and parenting time arrangements with the "hope[] that the parties will be able [to] continue to co-parent and cooperate with each other as they have to date." (Appellant's App. p. 5). On July 11, 2013, Father filed a motion to correct error, contending that the trial court erred in finding that Mother established a legitimate good faith reason for her relocation, which the trial court denied the same day.

Father now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### *APPEAL*

#### I. *Standard of Review*

In this case, the parties did not request, and the trial court did not issue, specific findings of fact or conclusions of law. Accordingly, we review this case under a general judgment standard. *L.C. v. T.M.*, 996 N.E.2d 403, 407 (Ind. Ct. App. 2013). Relying on this standard, we will affirm the trial court if its judgment "can be sustained on any legal theory consistent with the evidence." *Id.*

The Indiana Supreme Court has articulated an unequivocal policy of "granting latitude and deference to our trial judges in family law matters." *Swadner v. Swadner*, 897 N.E.2d 966, 971 (Ind. Ct. App. 2008) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). "[A]ppellate courts 'are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their

5

demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.'" *D.C. v. J.A.C.*, 977 N.E.2d 951, 956-57 (Ind. 2012) (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)). It is well-established that there should be finality in matters concerning the custody of a child. *Baxendale v. Raich*, 878 N.E.2d 1252, 1258 (Ind. 2008). Accordingly, on review, "we 'will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment.'" *T.L. v. J.L.*, 950 N.E.2d 779, 784 (Ind. Ct. App. 2011) (quoting *Baxendale*, 878 N.E.2d at 1257-58), *reh'g denied*.

## II. *Relocation*

Father claims that the trial court abused its discretion in granting Mother's request to relocate thirty miles from Albion to Goshen. When a parent whose child is the subject of a custody or parenting time order seeks to relocate, he or she must provide notice to both the trial court and the non-relocating parent of his or her intent to move. Ind. Code §§ 31-17-2.2-1(a); -3(a)(1). Indiana's Relocation Statute mandates that this notice must provide the non-relocating parent with the relocating parent's new address and phone number, the intended move date, "the specific reasons for the relocation of the child[,]" a proposed revised parenting time schedule, and information about the non-relocating parent's ability to object. I.C. § 31-17-2.2-3(a)(2).

If, within sixty days of receiving notice, the non-relocating parent fails to object, the relocating custodial parent is permitted to relocate with the child. I.C. § 31-17-2.2-5(a). However, if the non-relocating parent files a motion to prevent the child's relocation, the trial court must apply a two-prong test to decide the permissibility of the relocation. First,

the relocating parent must prove "that the proposed relocation is made in good faith and for a legitimate reason." I.C. § 31-17-2.2-5(c). Second, once a good faith basis and a legitimate reason for the relocation have been established, the burden of proof shifts to the non-relocating parent to demonstrate "that the proposed relocation is not in the best interest of the child." I.C. § 31-17-2.2-5(d).

### A. *Good Faith and Legitimate Reason*

Father first asserts that Mother failed to satisfy her burden of proof that the proposed relocation is in good faith and for a legitimate purpose. The Relocation Statute "requires that a legitimate reason be objectively shown[] and[,] by requiring that the relocation be in good faith, demands that the objective reason be more than a mere pretext." *T.L.*, 950 N.E.2d at 787. In general, our court has found that employment opportunities, financial considerations, and proximity to family are legitimate reasons to justify a relocation. *See id.* at 787-88. Father contends that, by citing no "economic or familial benefit," Mother's proposed relocation is not grounded in a legitimate purpose. (Appellant's Br. p. 13). While economic and familial considerations are valid bases for relocating, they are certainly not the *only* legitimate reasons a parent may provide. *See H.H. v. A.A.*, 3 N.E.3d 30 (Ind. Ct. App. 2014) (finding mother's desire "to live and create a family life" with her new husband in Hawaii was a legitimate purpose).

In this case, Mother's notice of relocation provided that her reason for relocating "is because my family is expanding, and I would like [to] move to a better school district for the best interest of my [C]hildren." (Appellant's App. p. 29). At the hearing, Mother testified that she and Fiancé were engaged and that they had recently welcomed a baby;

7

thus, a larger home was necessary in order to accommodate all four of their children. Furthermore, because both Mother and Fiancé primarily work from home, they needed a house with adequate office space. According to Mother, she began hunting for a new house in Shipshewana "mainly because of the school system. It graded really well." (Transcript p. 19). However, after Father informed Mother that Shipshewana's school system did not have a football team, which would be very important to their son, Mother refocused her search to the Middlebury Community Schools District. Conversely, Father maintains that the relocation to Goshen serves only to move the Children further away from Father and their family in Noble County and increases the distance of Mother's weekly commutes to Fort Wayne. Additionally, Father posits that "Mother's stated reason for finding better schools seems mostly an afterthought and not an actual reason for relocation" because Mother initially looked for houses in Albion and she presented no evidence that Middlebury Community Schools are superior to Central Noble Community Schools. (Appellant's Br. p. 11).

We must reiterate that the trial court is entitled to great deference in this matter, and the trial court considered all of the reasons proffered by Mother to find that she had "a reasonable basis" for moving. (Tr. p. 100). We decline Father's invitation to reweigh the evidence or assess Mother's credibility. The record clearly supports the trial court's conclusion that Mother desired to relocate in good faith. In deciding to purchase a home in Goshen, Mother sought to alleviate Father's inconvenience: Goshen is only thirty miles from Father's home in Albion, Father works in Goshen, and Father's two older children live in Middlebury and attend the same school system that the Children would. Mother

testified that she wanted to maintain the same parenting time schedule with Father, and Father agreed that, because he works so close to the Children's new school, he could still coach their sports teams, participate in school functions, and attend their extracurricular activities. Mother also believed that Goshen was a reasonable choice because it is closer to Grand Rapids, where she travels quarterly for work, and where Fiancé travels weekly for work and to pick up his child.

The "good faith and for a legitimate reason" criterion should not "pose[] an inordinately high bar for a relocating parent to meet." *T.L.*, 950 N.E.2d at 789. As the trial court stated during the hearing, this is not "a situation where somebody is going to be deprived of parenting time[,]" nor is it a scheme by Mother to take the Children away from Father. (Tr. pp. 98-99). Accordingly, we conclude that the trial court properly exercised its discretion in finding that Mother demonstrated a good faith and legitimate reason for moving.

B. *Best Interests of the Children*

Second, Father asserts that the trial court abused its discretion in determining that the relocation is in the Children's best interests. It is well-established that "the resolution of relocation disputes ultimately turns on a judicial determination of the best interests of the child." *T.L.*, 950 N.E.2d at 788.

The Relocation Statute stipulates that the burden is on Father to prove that the relocation is *not* in the best interests of the Children, which the trial court concluded Father failed to do. I.C. § 31-17-2.2-5(d). The relevant factors the trial court must consider in evaluating the Children's best interests include:

9

(1) The age and sex of the child.
(2) The wishes of the child's parent or parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
    (A) the child's parent or parents;
    (B) the child's sibling[(s)]; and
    (C) any other person who may significantly affect the child's best interests.
 (5) The child's adjustment to the child's:
    (A) home;
    (B) school; and
    (C) community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian . . . .

I.C. § 31-17-2-8.[2]  The trial court must consider each of the statutory factors in making a best interests determination, but it is well within the trial court's discretion to place greater weight on certain evidence and certain factors.  *D.C.*, 977 N.E.2d at 956-57.

Father now claims that the trial court failed to consider the negative impact that the relocation would have on the Children's relationships with their extended family members, Father's involvement in the Children's lives, and the Children's attachment to their school and community.  Specifically, Father argues that, whereas the Children have no family in Goshen, they "regularly associate with" their twenty-one relatives who live in Noble County.  (Appellant's Br. p. 14).  Father also expressed concern over his inability to

---

[2]  Father argues that the trial court was obligated to weigh the factors enumerated in Indiana Code section 31-17-2.2-1(b) (Relocation Factors) to determine whether the relocation would be in the Children's best interests.  However, we note that this provision explicitly states that the trial court is to consider the Relocation Factors for deciding whether to *modify* a custody order following a relocation, not in determining whether the relocation itself is permissible.  Although the trial court denied Father's motion to modify custody, Father's sole contention on appeal is that the trial court abused its discretion by granting Mother permission to relocate.  Because the issue of the Children's custody is not before this court, we do not address Father's arguments concerning the Relocation Factors.

participate in the Children's activities if they were no longer in Albion. He noted that the Children were accustomed to their routine and being able to ride the school bus together, and that a new school might not be better or provide the same extracurricular opportunities. According to Father, "staying in a life that [the Children] know, that they are comfortable with, that they love is better for them than rolling the dice and seeing what might happen an hour away from here." (Tr. p. 82).

We find that Father's arguments are unsupported by the record. Per the trial court's order, Father will have precisely the same amount of, and the same schedule for, parenting time. Thus, the Children will have the same opportunity during Father's custodial weekends to interact with his side of the family, and although there is extended family in Noble County, the Children's half-siblings are closer to Goshen. Albion is only thirty miles away from Goshen; this distance will not prohibit Father's active involvement in the Children's lives. *See Dixon v. Dixon*, 982 N.E.2d 24, 26 (Ind. Ct. App. 2013). In fact, Father acknowledged during the hearing that the proximity of his work to the Children's new school would permit him to attend all of their school and athletic events, and Mother testified that their son had been invited to play on a travel baseball league for which Father had been offered a coaching position. The continuation of Father's interaction with the Children is undoubtedly important, but it is the best interests of the Children—not Father—that are of the utmost significance.

Regarding the Children's adjustment to their new school and community, both Father and Mother testified that their daughter is a social butterfly and that their son quickly makes friends through sports. Additionally, while the Children's Albion home is located

11

out in the country, their new house in Goshen is located in a subdivision with other young children. It is not axiomatic that changes in the Children's school, community, and daily routine are contrary to their best interests. Rather, it is the Children's ability to adjust to those changes that determines whether a relocation is appropriate, and Father has presented no evidence that the move will negatively affect the Children. *See id.*

Father's final contention is that the trial court failed to consider the wishes of his Children in determining their best interests. Specifically, Father argues that the trial court should have heeded his requests for the appointment of a guardian *ad litem* or for an *in camera* interview before rendering its decision. At the time of the evidentiary hearing, the Children were nine and six years old. Thus, while the Children's wishes are certainly a factor to be considered, the trial court was under no obligation to place a significant value on their preferences because they are under age fourteen. I.C. § 31-17-2-8(3).

In certain circumstances, an *in camera* interview is a beneficial tool for the trial court, but it is not an "absolute requirement." *In re Paternity of X.A.S. v. S.K.*, 928 N.E.2d 222, 229 (Ind. Ct. App. 2010), *trans. denied*. Moreover, Father waited until three days after the evidentiary hearing to file his request for the interview. All evidence must be presented "during the course of a trial and it is a matter of discretion whether a trial court will permit a party to present additional evidence or testimony . . . after the close of all of the evidence." *In re Paternity of Seifert*, 605 N.E.2d 1202, 1207 (Ind. Ct. App. 1993), *trans. denied*. By the time Father filed the request for an *in camera* interview, the trial court was nearly ready to issue its decision; therefore, we do not find the trial court abused its discretion in denying Father's request. Similarly, the appointment of a guardian *ad litem*

is a matter left to the trial court's sound discretion. I.C. § 31-17-6-1. Because it is evident that both Father and Mother are committed to protecting the Children's best interests, we find the trial court did not abuse its discretion in declining to appoint a guardian *ad litem*.

We further find that there is sufficient evidence of the Children's wishes in the record. Both Father and Mother testified that they have a close relationship with the Children, and they both strive to ensure the Children are able to participate in the activities they enjoy. Following the divorce, the Children have lived primarily with Mother, who is home during the day, but have also enjoyed having Father as a coach in their various sports. Accordingly, it is reasonable to infer that the Children would desire to maintain their close relationship with both parents. As we previously noted, the amount of time the Children spend with Father was not going to change regardless of whether the trial court approved or denied Mother's request to relocate. Therefore, we conclude that the trial court did not abuse its discretion in granting Mother's relocation request because Father failed to prove that it was not in the Children's best interests.

## *CROSS-APPEAL*

Mother claims that she is entitled to an award of appellate attorney fees because "Father's appeal is frivolous and in bad faith." (Appellee's Br. p. 13). Contending that Father's "appeal is an academic exercise only[,]" Mother cites to Father's failure to present any evidence at trial to rebut Mother's testimony that the relocation was in the Children's best interests and that the custody arrangement should be maintained. (Appellee's Br. p. 14). On the other hand, Father claims that he filed his appeal "in good faith and has laid

13

out legitimate arguments in a clear and concise manner" and that he has complied with "the form and content requirements" of the appellate rules. (Appellant's Reply Br. p. 4).

Pursuant to Indiana Rule of Appellate Procedure 66(E), our court has discretion to award damages, which may be in the form of attorney fees, "if an appeal . . . is frivolous or in bad faith." Our court has resolved to "assess appellate damages only against an appellant who in bad faith maintains a wholly frivolous appeal"—that is, where the "appeal is *permeated with* meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Harness v. Parkar*, 965 N.E.2d 756 (Ind. Ct. App. 2012); *Thacker*, 797 N.E.2d at 346 (emphasis added). We recognize that, in executing this discretion, we must "use extreme restraint" because there is a "potential chilling effect upon the exercise of the right to appeal." *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). The imposition of appellate attorney fees "is not imposed to punish mere lack of merit, but something more egregious." *Manous v. Manousogianakis*, 824 N.E.2d 756, 767 (Ind. Ct. App. 2005).

Claims for appellate attorney fees are categorized as either "substantive" or "procedural" bad faith claims. *Thacker*, 797 N.E.2d at 346. A procedural bad faith claim is found where "a party flagrantly disregards" the rules of appellate procedure, omits or misrepresents relevant facts, or attempts to waste the time of the opposing party or the court. *Id.* at 346-47. Alternatively, a substantive bad faith claim occurs where a party's "contentions and arguments are utterly devoid of all plausibility." *Id.* at 346. Here, Mother does not challenge Father's adherence to the procedural rules; thus, she has raised a substantive bad faith claim.

14

We find that Father's appeal is neither frivolous nor in bad faith. Father presented a detailed argument, supported by citations to case law, challenging the trial court's determination that Mother's specified bases for relocating are sufficient to constitute a legitimate purpose. The current case law is sparse in terms of defining what is or is not an acceptable purpose for relocating, so while we ultimately agree with the trial court that Mother had a valid reason to move, we cannot say that it was implausible for Father to argue that Mother failed to tender a sufficiently legitimate reason. Therefore, we decline to award Mother her attorney fees under Appellate Rule 66(E).

CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in granting Mother's request to relocate because she had a good faith and legitimate purpose for relocating, and the move was not contrary to the Children's best interests. Additionally, we conclude that Mother is not entitled to appellate attorney fees because Father's appeal is not frivolous or in bad faith.

Affirmed.

BARNES, J. concurs

ROBB, J. dissents with separate opinion

# IN THE
# COURT OF APPEALS OF INDIANA

GEOFFREY A. GILBERT,    )
    )
    Appellant-Respondent,    )
    )
    vs.    )    No. 57A03-1308-DR-312
    )
MELINDA J. GILBERT,    )
    )
    Appellee-Respondent.    )

**ROBB, Judge, dissenting**

As noted by the majority, when a parent subject to a custody or parenting time order wishes to relocate and the other parent objects, the relocating parent must prove that the relocation is made in good faith and for a legitimate reason. If the relocating parent makes this showing, then the objecting parent must prove that the relocation is not in the child's best interest. The majority decides that the record clearly supports the trial court's

16

conclusion that Mother desired to relocate in good faith and for a legitimate reason. I respectfully dissent.[3]

In her notice of intent to relocate, Mother stated her reasons as accommodating her growing family and moving to a better school district. The only testimony about the quality of the school districts in the area was Mother's reference to originally looking for a new house in Shipshewana because those schools "graded really well." Transcript at 19. However, when Father pointed out Shipshewana schools did not have a football program in which their son could participate, Mother began looking at houses in Goshen. There was no testimony comparing the schools the children were attending with the Goshen schools, and in fact, there was no testimony about the Goshen schools at all, other than Mother affirming she had investigated them. Therefore, I do not believe that there is any evidence of record that supports moving to a better school district as a good faith and legitimate reason for Mother's proposed relocation.

Mother also testified that space was the main reason for moving: she wanted a bigger home because she had become engaged, her fiancé had moved in with her and the children, and she and her fiancé had recently had a baby. With regard to Mother's efforts to find a bigger home in her current town, Mother testified she looked in Albion but did not find anything she liked: "there aren't any that were any I guess bigger than the house that we live in now. I mean there wasn't a house that was as accommodating as moving." Id. at 25. However, she went to no actual showings in Albion because she found no listings

---

[3] I concur with the majority that Mother is not entitled to attorney fees pursuant to Appellate Rule 66(E).

17

online she felt were worthwhile. Mother's proposed new home in Goshen is new construction; there was no testimony that she investigated the possibility of building a new home in Albion.

I see the evidence in this case as distinctly different from recent cases in which we have found a good faith and legitimate reason for relocation was proven. In In re Paternity of X.A.S. v. S.K., 928 N.E.2d 222 (Ind. Ct. App. 2010), trans. denied, for example, the child's custodial parent and primary caregiver for nine of his twelve years married a member of the United States Navy who was stationed in California. We held the trial court's denial of the custodial parent's petition to relocate was in error, noting that regardless of the decision, the child was going to live across the country from one of his parents and it was in the child's best interest to stay with his primary caregiver. Id. at 229-30; see also H.H., 3 N.E.3d 30 (holding mother's desire to move with child to join her new husband who had accepted a job in and moved to Hawaii was a good faith and legitimate reason for relocation, but also holding the move was not in the child's best interest); Kietzman v. Kietzman, 992 N.E.2d 946, 950 (Ind. Ct. App. 2013) (affirming trial court's grant of mother's request to relocate with child and new husband, whose job had offered him a three year assignment to China). In those cases, there was no way for the parent to satisfy the competing interests of keeping the children near the non-custodial parent and also building a new life. Here, although Mother is moving only a few miles, she has shown no significant and compelling reason for her move. She may not have been able to find a home she wanted to move into in Albion at this time, but she presents no reason why she

must move now. She indicated she wished to have the move accomplished prior to the start of school, but if she waited for a suitable home to become available (or built a home to suit) in Albion, the children would not be changing schools and the timing would not matter. Mother's proposed move separates Father from the children just enough that although he will still be able to exercise his scheduled parenting time, he will be more on the fringes of their everyday lives. As Father testified:

> To say that things wouldn't change when you take a seven minute drive to see them to over an hour drive to see them I think is ludicrous, because it does change things. And again you might be able to show on paper where, oh, ten miles is ten miles, but it is not the same thing when you are that far apart and the opportunities won't come. And what I've learned from the past is what might be hey can you pick them up from school now because I am right here turns into hey, don't worry about it or I don't even actually get a call and someone else, a friend picks them up and I don't even get that opportunity anymore. Those are the things that don't show up on paper.

Tr. at 81.

As the majority states, the "good faith and legitimate reason" prong should not set an inordinately high bar for the relocating parent to meet, lest the ultimate question of the best interest of the child never be reached. See slip op. at 9 (quoting T.L., 950 N.E.2d at 789). Nonetheless, the reason for relocation must be objectively legitimate. Id. at 7 (quoting T.L., 950 N.E.2d at 787). Although Mother mentioned several other supposed reasons for moving—such as the schools, and being somewhat closer to Grand Rapids for occasional work purposes and purposes of her fiancé visiting his daughter—she stated more than once that her primary reason for moving was that her growing family needed

19

more space. If simply saying, "I want a bigger house," is a good faith and legitimate reason for relocating, then we have gone too far in the opposite direction of setting too high a bar for the relocating parent to meet, we have set no bar whatsoever. Nothing underscores the need for a more definitive standard of what constitutes a "good faith and legitimate reason" than Mother's attitude, reflected both in her brief and in her statements at oral argument, that it was too late to afford Father any relief—the trial court had accepted her reason and she had already moved. In essence, any stated reason that is not an outright admission that the parent is relocating to interfere with the other parent's rights would be considered a good faith and legitimate reason for relocating, and the relocating parent's burden of proof as set forth in the statute would be meaningless.

In D.C. v. J.A.C., 977 N.E.2d 951 (Ind. 2012), our supreme court considered a trial court order finding the custodial parent who sought to move out-of-state with the parties' child met her initial burden of showing a good faith and legitimate reason for relocation – better employment and a romantic relationship – but also finding relocation was not in the child's best interest. In affirming the trial court, the court "reiterate[d] that in family law matters, trial courts are afforded considerable deference" and held the trial court's judgment denying the petition to relocate was "well supported by the findings . . . ." Id. at 953. Here, the trial court made no findings of fact, it simply found as a matter of law that Mother had met her burden of proving a good faith and legitimate reason for relocating and that Father had not met his succeeding burden of proving relocation was not in the children's best interests. Because I disagree that Mother has stated a good faith and

20

legitimate reason for relocating, I would hold the trial court erred in approving the relocation.[4]

---

[4] Father presented his own testimony regarding the proposed move and its impact on the best interests of the children. Because I do not believe Mother met her burden of proving a good faith and legitimate reason for moving, I do not believe the burden shifted to Father to prove the best interests of the children were not served by relocation, and I therefore do not address that point.